# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JILLIAN MARLOWE,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| | ) | **NO. 4:16-CV-40054-TSH** |
| v. | ) | |
| | ) | |
| **KEENE STATE COLLEGE, UNIVERSITY SYSTEM OF NEW HAMPSHIRE, REBECCA LYTLE, AND THOMAS W. CONNELLY, JR.,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 2)

### May 26, 2016

Jillian Marlowe (Plaintiff) seeks immediate reinstatement in the clinical nursing program at Keene State College. She was removed from the program on March 1, 2016, on the basis of alleged unsatisfactory performance at her clinical placement. Keene State College has offered her to return to the program to finish her studies in the fall of 2016, after completion of a paid summer internship. Plaintiff moves for injunctive relief, seeking an order that she be placed in a clinical program in the summer of 2016, without having to complete an internship. Because Plaintiff has presently failed to show a potential for irreparable harm, her motion (Docket No. 2) is ***denied***. However, Defendants are ordered to produce additional information to clarify Plaintiff's rights and obligations regarding the completion of her degree program.

**Background**

Jillian Marlowe (Plaintiff) began her undergraduate studies in the registered nursing program at Keene State College (Keene State) in the fall of 2012, as a member of the class of 2016. Keene State is a subsidiary member of the University System of New Hampshire (USNH). The first two years of Keene State's nursing program involve classroom instruction; the last two years involve both classroom and clinical studies. At the time of Marlowe's matriculation in 2012, nursing students were required to maintain a 3.0 GPA in "allied health courses" in order to continue with the major and begin clinical studies. Marlowe was accepted into the clinical portion of the program in the spring of 2015. During clinical studies, nursing students are placed in "preceptorships," during which they work alongside an expert nurse in a particular practice area for a required number of clinical hours. Preceptors are assigned as part of "NURS-406," which is typically taken in the final semester of undergraduate study. Preceptors are typically not faculty members.

Marlowe's participation in the nursing program is governed by the 2014-2016 Nursing Program Student Handbook (Handbook). Before beginning her clinical studies, she was required to execute a written acknowledgment of her review and understanding of the Handbook, and to agree to the policies and procedures set forth therein.

Under the heading "Academic and Clinical Performance Counseling," the Handbook provides: "When a student is not successfully meeting performance criteria in the clinical or laboratory settings, a clinical learning contract is initiated. . . . Any student receiving a written clinical contract is required to meet with the Director of Nursing within one (1) week of receiving the clinical contract." (Docket No. 1-3 at 17.)  Under a heading titled "Clinical Skills Remediation," the Handbook provides:

> Students who are unable to perform clinical skills satisfactorily in the clinical area will return to the clinical skills laboratory with a Clinical Learning Contract from the clinical instructor for additional practice. The nursing clinical laboratory instructor will sign and return a copy of the Clinical Learning Contract to the instructor and the Director of Nursing. Remediation must occur within two weeks. The nursing laboratory instructor will provide a written report to the instructor and the Director of Nursing at the end of the two weeks.

(Docket No. 1-4 at 8.) The Handbook also contains a sample "Clinical Learning Contract," which includes blank spaces for descriptions of the clinical objectives that the student has failed to meet, as well as the applicable remediation plan, to be signed by a member of the faculty and the student. (Docket No. 1-5 at 19.)

On December 21, 2015, at the end of what Marlowe thought would be her penultimate semester at Keene State, she received an email from Keene State's then-Director of Nursing, stating that she had "met the requirements for progression to Courses NURS 404, 405 and 406 as a senior in spring semester 2016 and earned a 3.0 in nursing courses this semester." (Docket No. 1-8 at 1.) The school had previously determined that her GPA prior to the fall of 2015 was also satisfactory for continuation in the clinical program.

Marlowe began her clinical nursing preceptorship in January of 2016 at Home Healthcare Hospice and Community Services (HCS) and performed approximately 120 preceptor hours in January and February. On February 25, 2016, Marlowe's faculty advisor, Patricia Osimo, had a telephone conversation with her preceptor, Charlotte Pufki, to discuss Marlowe's performance. The preceptor indicated that Marlowe was struggling in certain areas, such as understanding medical terms, taking vital signs, conducting assessments, applying her knowledge situationally, and managing her time. Osimo contacted Marlowe and requested to meet with her on March 1, 2016.

At this meeting, Marlowe and Osimo were present, as well as the current Director of Nursing, Thomas W. Connelly, Jr. (Defendant), and the Assistant Dean of Graduate and Professional Studies, Karrie Kalich.  Marlowe was informed that she was being removed from the Keene State clinical nursing program, effective immediately.  The reasons given, verbally, included specific concerns allegedly mentioned to Osimo by Pufki with respect to Marlowe's ability to conduct a head-to-toe assessment, as well as general concerns regarding her medical knowledge and overall performance compared to other students in the program.  She was told that she could potentially graduate in May of 2016 with an Allied Health Science major and was instructed to speak with Kalich about arranging for this proposed degree change.

Before the March 1, 2016 meeting, Marlowe had had weekly advisory meetings with Osimo, and Osimo had provided her written feedback in response to weekly reflection reports about her preceptorship.  Osimo had not raised any concerns regarding Marlowe's ability to successfully complete the preceptorship.  Marlowe's preceptor did not utilize the "Preceptor/Student Evaluation Form" or any other written medium for providing feedback about Marlowe's clinical performance listed under "clinical preceptor responsibilities" on the NURS 406 syllabus. (Docket No. 1-6 at 7.)  Marlowe was never offered a clinical learning contract to rehabilitate any alleged deficiencies in her clinical performance, as set forth in the Handbook.

At a second meeting, on or about March 2, 2016, which included Marlowe, Marlowe's mother, Osimo, Connelly, and Kalich, Marlowe and her mother requested a written explanation for her removal from the program.  On March 16, 2016, Connelly wrote a letter summarizing the rationale for the decision:

- Your preceptor verbalized concerns over your physical assessment skills (specifically vital signs and a head-to-toe assessment) and your inability to take on the lead nursing role during home visits (under the direct supervision of the preceptor).

- Your preceptor also identified that you were not able to accurately assess the patient in relation to oxygenation status and smoking history.
- It was also noted that you experienced difficulty in the ability to multi-task and follow directions from the preceptor.
- Concerns were expressed over your limited knowledge and application of medical terminology and lacking a systematized plan for medication classifications and indications.

(Docket No. 1-9 at 1.)  Connelly again suggested that if Marlowe wished to graduate in May of 2016 she should arrange a meeting with Kalich, and he told her that she had a right to appeal this decision.

On April 4, 2016, Marlowe, through counsel, demanded reinstatement in the clinical nursing program.  She also demanded an opportunity to pursue any academic rehabilitation perceived as necessary by Defendants, pursuant to the policies and procedures outlined in the Handbook—specifically, by taking advantage of the learning contract that would provide access to the laboratory to work on any perceived deficiencies.

On April 7, 2016, Marlowe received another letter from Connelly, stating that her performance on the "ATI NCLEX-RN Predictor Exams" and in "NURS 399"—a two-credit elective in Medical-Surgical Nursing—was "below the probability of passing the NCLEX-RN." (Docket No. 1-12 at 1.)  The NCLEX-RN is the licensure examination for registered nurses.  He offered her free enrollment in "NURS 308: Medical-Surgical Nursing – Acute Care" during the summer semester, "to enhance [her] knowledge" before taking the NCLEX-RN. (Docket No. 1-12 at 1.)

At a third meeting held on April 13, 2016, the Dean of Graduate and Professional Studies, Rebecca Lytle (Defendant), told Marlowe that she had been mistakenly allowed to continue into her spring 2016 preceptorship with a GPA under 3.0 in required nursing courses—despite the December 2015 email from the Director of Nursing, on which Lytle had been copied, which stated

that Marlowe had met the prerequisite requirements for NURS 406. During this meeting, Marlowe

discovered that the school was including the two-credit elective, NURS 399, in her GPA for

required nursing courses.

On April 14, 2016, Lytle wrote to Marlowe and stated that she could remain in the nursing

program on the following conditions:

- Maintain an overall average GPA of 3.0 in Nursing classes. For purposes of calculating your overall GPA for this requirement, the NURS 399 course will be excluded because it was taken as an elective. All other NURS courses in which a grade is issued will be included in the calculation.
- Pending successful completion of the above criteria after spring grades are posted, your status will be reviewed.

(Docket No. 1-13 at 1.) Lytle further stated that, because Marlowe had been removed from her

preceptor placement at HCS, a new placement would be determined pending completion of the

above criteria. Lytle wrote, "It is anticipated that you will be able to complete your additional

hours during the summer." (Docket No. 1-13 at 1.)

On April 25, 2016, Lytle wrote a second letter, stating that HCS had agreed to allow

Marlowe to return and complete the requirements of NURS 406 under the following conditions:

1. You have successfully completed all nursing classes and maintain your overall Nursing GPA of 3.0.
2. Remediate your skills in physical assessment in the simulation lab prior to starting with HCS.
3. Remediate your skills in basic vital signs in the simulation lab prior to starting with HCS.
4. HCS will provide you with a paid position working as a LNA pending you complete the appropriate paperwork with them. This will allow you to be closely supervised and to get additional hours of experience in basic skills.
5. Pending a successful paid "internship" with HCS throughout the summer and early fall, you will be allowed to complete your preceptor hours during the fall semester with Home Health.
6. Upon successful completion of your preceptor hours you will graduate with your Bachelor of Science in Nursing Degree.

(Docket No. 1-14 at 1.)  Defendants confirmed during oral argument that this letter is the operative offer for Marlowe's continuation in the clinical nursing program and that they are willing to honor its terms.

On April 26, 2016, Marlowe informed Defendants that she would not agree to a mandatory summer internship as a prerequisite to reinstatement into the clinical nursing program.  Marlowe requested that Defendants honor the terms set forth in Lytle's April 14, 2016 letter and immediately arrange a site where she could complete her summer preceptorship hours, along with the creation of any necessary clinical learning contract.

Marlowe filed this lawsuit on May 11, 2016, against Keene State, USNH, Lytle, and Connelly, alleging the following counts: breach of contract by Keene State and USNH (count I); injunctive relief against Keene State and USNH (count II); declaratory relief against Keene State and USNH (count III); intentional infliction of emotional distress by Connelly and Lytle (count IV); and breach of the covenant of good faith and fair dealing by Keene State and USNH (count V).  Marlowe also moved for a preliminary injunction, seeking the following relief from Keene State and UNSH:

1. Immediately reinstate the plaintiff into NURS-406 (Clinical – Advanced Care) under a clinical learning contract in the form provided at Page 75 of the Keene State College Nursing Handbook;
2. Assign the plaintiff to a new faculty advisor and preceptorship site no later than June 1, 2016.
3. Credit the plaintiff with all clinical nursing hours completed prior to her removal from NURS-406; and
4. Thereafter comply with all applicable policies and procedures set forth in the Keene State Nursing Handbook and NURS-406 Syllabus.

(Docket No. 2-1 at 1.)

**Standard of Review**

When reviewing a motion for preliminary injunction, the court must assess four elements: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (citation omitted).

**Discussion**

A. *Likelihood of Success on the Merits*

Plaintiff argues that she is likely to succeed on her contractual claims because Keene State and USNH (collectively, Defendants) have failed to follow their own policies for academic supervision and rehabilitation. She asserts that the Handbook and the NURS 406 syllabus formed the terms of a contract between the school and her, which the school breached by summarily removing her from the clinical program and adding new prerequisites to graduation.

Defendants, for their part, argue that their decision to withdraw Marlowe from her preceptorship was within their authority to take action against students who present safety concerns. Defendants rely on a portion of the Handbook titled "Positon on Unsafe Practice in Clinical Setting," which provides:

> [C]linical nursing faculty have the responsibility of determining when a student can practice at a safe level and when a student is unable to function at a safe level in the clinical area. If the instructor determines that a student is unsafe to practice, the instructor has the obligation to remove the student from clinical practice. Depending on the nature of the safety issue, the student may be asked to leave the clinical site. Safety violations include, but are not restricted to misconduct, dishonesty, and failure to maintain one's self in an alert and sober manner and not impaired by drugs or alcohol.
> . . .

> Within 24 hours of any incident requiring the dismissal of the student from a clinical setting, the clinical instructor will contact the Director of Nursing. Within 48 hours of the incident, the clinical instructor, course coordinator, and Director of Nursing will schedule a conference with the student. At that time the student will have the opportunity to explain or defend the unsafe behavior and an appropriate plan will be developed. The Nursing Program has both the right and responsibility to dismiss from the program any student whose health, conduct or academic standing make it unsafe for that student to remain in a nursing course or the nursing major.

(Docket No. 1-4 at 7-8.) Defendants assert that they complied with this portion of the Handbook by removing her from her preceptorship after she was deemed to be "operating at a level below fundamental." (Docket No. 17 at 13.) Defendants contend that a learning contract would not have addressed the problem, because Marlowe's deficiencies were too numerous.

Although Defendants cite to Massachusetts cases in their memorandum, the parties agree that New Hampshire law applies to this case. Under New Hampshire law, the relationship between a student and her college is contractual; however, because the relationship is distinctive, "a strict doctrinal approach is inappropriate." *Gamble v. Univ. Sys. of New Hampshire*, 610 A.2d 357, 360 (N.H. 1992) (citing *Lyons v. Salve Regina College,* 565 F.2d 200, 202 (1st Cir. 1977)). "Thus, although the first step of analysis is to examine the language of the contract under the basic tenets of contract law," the court must also consider the parties' "unique relationship." *Id.* The proper interpretation of a contract is a question of law for the court, and the contract's proper meaning will be determined "based on the meaning that would be attached to it by reasonable persons." *Id.* (quoting *Goodwin Railroad, Inc. v. State,* 517 A.2d 823, 829 (N.H. 1986)). The court should "consider the objective intent of the parties at the time the contract was made." *Id.* (citing *C & M Realty Trust v. Wiedenkeller,* 578 A.2d 354, 357 (N.H. 1990)).

Marlowe has established a likelihood of success on her claim that Defendants breached their contract by failing to comply with the terms of the Handbook. As quoted above, the

Handbook provides that if a student fails to meet clinical expectations, the Nursing Department must initiate a learning contract, followed by a meeting and up to two weeks of academic rehabilitation. (Docket Nos. 1-3 at 17; 1-4 at 8.)  Thus, based on the Handbook, Marlowe could reasonably expect that she would not be summarily removed from the nursing program without an opportunity to rehabilitate any alleged deficiencies in her clinical performance.  Even under the provision of the Handbook upon which Defendants rely, concerning instances of unsafe conduct, "the student will have the opportunity to explain or defend the unsafe behavior and an appropriate plan will be developed." (Docket No. 1-4 at 8.)  Here, Defendants' initial action was to terminate Marlowe from the nursing program, effective immediately, with no learning contract and no opportunity to improve her allegedly deficient performance.  It was only after she objected to this decision and retained counsel that Defendants began to formulate a plan for her continuation in the program, the most recent version of which was not communicated to her until nearly two months after she had been removed.  Both versions of this plan, including the most recent incarnation—involving a summer internship and a fall preceptorship—foreclosed the opportunity for Marlowe to rehabilitate her alleged deficiencies in time to graduate in the spring of 2016.

Defendants are entitled to deference in the conduct of their academic affairs.  Nevertheless, the Handbook provided a set of expectations regarding the manner in which Defendants would address deficiencies in Marlowe's clinical performance.  While I appreciate that I have heard only Plaintiff's recollection of the facts, on the record before me there is no indication that Defendants complied with those procedures.  Therefore, Marlowe has shown a reasonable likelihood of success on the merits of her breach-of-contract claim.

B. *Potential for Irreparable Harm*

Irreparable harm is "a substantial injury that is not accurately measurable or adequately compensable by money damages." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996). It is a "necessary threshold showing for awarding preliminary injunctive relief." *Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004). Marlowe argues that she will suffer irreparable harm unless she is allowed to finish her preceptorship during the summer of 2016. In support, she relies on cases in which students were expelled or removed from academic programs, and the courts found a potential for irreparable harm in the absence of injunctive relief. *See, e.g., McLaughlin v. Massachusetts Mar. Acad.*, 564 F. Supp. 809, 811 (D. Mass. 1983); *see also Johnson v. Collins*, 233 F. Supp. 2d 241, 251 (D.N.H. 2002).

Here, although Defendants initially told Marlowe that she would be removed from the nursing program, they have amended their stance and proposed an option for her to complete her degree in the fall of 2016. Under the operative plan, Marlowe will complete a paid summer internship and will then finish her clinical coursework. She will not be precluded from obtaining her degree, sitting for the NCLEX-RN exam, and becoming a registered nurse if she passes the exam. To the extent that Defendants are found liable for breach of contract, Marlowe is entitled to be fully compensated by monetary damages for expenses incurred as a result of their actions.

Moreover, the harm that Marlowe has suffered as a result of being prevented from graduating with her class has already occurred; nothing in this Court's power can change that, and she does not suggest otherwise. "To demonstrate the prospect of future harm, . . . a plaintiff must show more than that she has been injured." *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009) (quoting *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 16 (1st Cir. 2004)). Past exposure to illegal conduct, unaccompanied by "continuing, present adverse effects," is not

sufficient to show irreparable harm. *Id*. (quoting *Steir,* 383 F.3d at 16). Under the operative plan for Marlowe's return to the clinical nursing program, there is no appreciable likelihood of continuing adverse consequences. Thus, I find that Marlowe has not shown a potential for irreparable harm in the absence of the requested injunctive relief. Because she has failed to satisfy this prong of the four-part analysis, I need not address the remaining two elements.

## Conclusion

For the reasons set forth above, Plaintiff's motion for preliminary injunction (Docket No. 2) is ***denied***. Defendants are ordered to submit the following information, in writing, to this Court and to Plaintiff, within fourteen days of the date of this order:

1. Provide clarification regarding which classes are included in "Nursing GPA," as that term is referenced in Lytle's April 26, 2016 letter, as well as a description of what "successfully complete[] all nursing classes" means, as referenced in same.

2. Provide a detailed and specific description of the skills remediation that will occur in the simulation lab prior to Plaintiff starting her internship and/or clinical placement at HCS.

3. Provide details regarding the paid summer LNA position at HCS, including dates, hours, wages, expectations, and a description of how this experience will provide appropriate and useful preparation for the completion of NURS 406 in the fall of 2016.

4. Clarify whether Plaintiff's continuation into the completion of NURS 406 will be contingent on her performance during the summer internship and, if so, what standards will be used to assess her performance.

5. Clarify whether Plaintiff will be credited for the clinical hours she has completed to date in NURS 406.

SO ORDERED.

                                                                */s/ Timothy S. Hillman*
                                                                **TIMOTHY S. HILLMAN**
                                                                **DISTRICT JUDGE**